UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
───────────────────────────────

REBECCA SHARROW,

                Plaintiff,         17-CV-591(MAT)

      v.                               **DECISION**
                                          **and ORDER**
COMMISSIONER OF SOCIAL SECURITY,

                Defendant.
───────────────────────────────

## **INTRODUCTION**

Rebecca Sharrow, ("Plaintiff"), who is represented by counsel, brings this action pursuant to the Social Security Act ("the Act"), seeking review of the final decision of the Commissioner of Social Security ("the Commissioner") denying her applications for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI"). This Court has jurisdiction over the matter pursuant to 42 U.S.C. § 405(g). Presently before the Court are the parties' motions for judgment on the pleadings pursuant to Rule 12(c) of the Federal Rules of Civil Procedure. Dkt.##12, 15.

## **BACKGROUND**

### A. **Procedural History**

Plaintiff filed an application for DIB and SSI on March 3, 2014, claiming disability since October 31, 2012. T. 177.[1] On April

---

[1] Citations to "T.__" refer to the pages of the administrative transcript.

30, 2014, the Social Security Administration ("SSA") issued a Notice of Disapproved Claim. T. at 111-116. Plaintiff timely filed a request for hearing on May 20, 2014. T. 117-118. Plaintiff appeared with a representative before Administrative Law Judge ("ALJ") Joan H. Deans on July 13, 2016. T. 42-86. On August 19, 2016, the ALJ issued an unfavorable determination, T. 10-34, and the Appeals Council denied review on May 30, 2017. T. 3-6. This action followed. Dkt. #1.

The issue before the Court is whether the Commissioner's decision that Plaintiff was not disabled is supported by substantial evidence and free of legal error.

**B. The ALJ's Decision**

In applying the familiar five-step sequential analysis, as contained in the administrative regulations promulgated by the Social Security Administration ("SSA"), see 20 C.F.R. §§ 404.1520, 416.920; Lynch v. Astrue, No. 07-CV-249, 2008 WL 3413899, at *2 (W.D.N.Y. Aug. 8, 2008) (detailing the five steps), the ALJ found: (1) Plaintiff had not engaged in substantial gainful activity since October 31, 2012; (2) she had the severe impairments of obesity, anemia, degenerative joint disease, degenerative disc disease, and history of asthma; (3) her impairments did not meet or equal the Listings set forth at 20 C.F.R. § 404, Subpt. P, Appx. 1. The ALJ found that she retained the residual functional capacity ("RFC") to perform a range of sedentary work with occasional postural

activities and environmental restrictions; and (4) Plaintiff could perform her past relevant work as a telephone sales representative and customer relations complaint clerk. The ALJ thus concluded that Plaintiff was not disabled under the Act. T. 16-27.

## **DISCUSSION**

### **A. Scope of Review**

A federal court should set aside an ALJ decision to deny disability benefits only where it is based on legal error or is not supported by substantial evidence. Balsamo v. Chater, 142 F.3d 75, 79 (2d Cir. 1998). "Substantial evidence means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Green-Younger v. Barnhart, 335 F.3d 99, 106 (2d Cir. 2003) (internal quotation marks omitted).

### **B. Plaintiff's Motion**

Plaintiff challenges the ALJ's decision on the following grounds: (1) the ALJ erred in determining that Plaintiff did not suffer from a severe mental and/or physical impairment; (3) the ALJ failed to attribute controlling weight or any other weight to the opinions of Plaintiff's treating physicians; and (4) the ALJ erred in relying upon the opinion of the consultative examiner. Dkt. #12-1 at 1.

Plaintiff argues that remand is necessary because the ALJ found that she did not suffer from a severe mental and/or physical impairment. Pl. Mem. 15-20.

At step two of the five-step analysis, the ALJ must consider a claimant's medically determinable impairments and decide whether they are "severe." A "severe" impairment is "one that significantly limits a claimant's ability to perform basic work activities," such as "walking, standing, sitting, lifting, [etc.], [c]apacities for seeing, hearing, and speaking, and [u]nderstanding, carrying out, and remembering simple instructions." Faison v. Berryhill, No. 16-CV-6044, 2017 WL 3381055, at *2 (W.D.N.Y. Aug. 5, 2017) (internal quotations and citations omitted). "It is the claimant's burden to show at step two that she has a severe impairment." Rye v. Colvin, No. 14-CV-170, 2016 WL 632242, at *3 (D. Vt. Feb. 17, 2016) (internal quotation omitted). A step two error is not reversible and does not necessitate remand where the record is devoid of evidence that the allegedly omitted impairments were severe. Id. at *4 (declining to remand where the plaintiff did not "specify why each of these impairments [that he contended were omitted at step two] meets the regulatory definition of a 'severe' impairment").

Moreover, "[c]ourts have developed a specialized variant of harmless-error analysis with respect to Step 2 severity errors in social security proceedings . . . . [W]hen an administrative law judge identifies some severe impairments at Step 2, and then proceeds through [the] sequential evaluation on the basis of [the] combined effects of all impairments, including those erroneously

4

found to be non severe, an error in failing to identify all severe impairments at Step 2 is harmless." Snyder v. Colvin, No. 13-CV-585, 2014 WL 3107962, at *5 (N.D.N.Y. July 8, 2014); see also Reices-Colon v. Astrue, 523 Fed. Appx. 796, 798 (2d Cir. 2013) (step two error was harmless where all of the claimant's conditions "were considered during the subsequent steps"). "Specifically, when functional effects of impairments erroneously determined to be non-severe at Step 2 are, nonetheless, fully considered and factored into subsequent residual functional capacity assessments, a reviewing court can confidently conclude that the same result would have been reached absent the error." Snyder, 2014 WL 3107962 at *5.

The record indicates as follows: Plaintiff is a 50-year old female with one year of college education and past relevant work as a sales representative, customer service representative, assistant manager, and customer retention representative. T. 48, 50-57. She testified that she was unable to continue working at her sales job because of the stress of being an aggressive salesperson and meeting quality assurance requirements. T. 51-52. She left her job as an assistant manager at a convenience store after suffering a "crack up" from depression and anxiety. T. 53. Plaintiff suffered depression and anxiety due to, among other things, her husband's unexpected passing, a terminated pregnancy, and body dysmorphic disorder stemming from lifelong obesity. T. 54-65. She had

5

previously weighed 500 pounds, but was down to 336 pounds after gastric bypass surgery. T. 50-51.

On May 23, 2010, Plaintiff complained of depression while being treated at Tuscarora Health Center ("Tuscarora"). She was observed to have a sad expression, flat affect, and she stated she did not like leaving her house. T. 719. She was diagnosed with depression. Id. A year later, during an appointment at Tuscarora, she reported that her moods were high and low but didn't want to take antidepressants/medications which may cause weight gain. T. 693. On September 29, 2011, Plaintiff's psychiatric exam was normal, except for complaints of of feeling more restless, could not settle down, nervous when she would go to work, withdrawn and wanted to be left alone. T. 685.

Plaintiff was prescribed Lexapro. T. 686. On October 20, 2011, she reported that she did not feel depressed or anxious regarding going to work and when she is away from home for anytime." T. 683.

On July 5, 2012, Plaintiff was upset about her daughters and family issues/relations, that she was under stress and had started a new job. T. 672. Her psychiatric assessment was otherwise normal. Id.

On October 23, 2012, during an appointment at Tuscarora, Plaintiff complained of depressive mood and continued family/financial stressors. T. 637. She reported at that she had stopped taking her Lexapro because she ran out. Id. She was

6

provided with resources "for self-help and CBT given and encouraged." T. 638.

Plaintiff was referred by Tuscarora to Niagara Falls Adult Mental Health Clinic ("the Clinic") for managing stress, anxiety, and depression. She appeared on April 11, 2014, for an initial assessment. T. 430. Plaintiff reported having a hard time managing stress which lead to depression and anxiety. She reported an "emotional breakdown" three years prior but did not go to the hospital. T. 431. Justin Walck, LMSW, assessed Plaintiff's impairments in functioning as "severe difficulty maintaining employment, moderate inability to get out of bed, poor personal hygiene and procrastination." Id. Plaintiff was diagnosed with generalized anxiety disorder, depressive disorder, and had a GAF of 55.[2] Id.

On April 24, 2014, Christine Ransom, Ph.D., performed a consultative mental evaluation of Plaintiff. T. 442-45. The psychologist found that Plaintiff was oriented with normal motor behavior, appropriate eye contact, fluent speech, coherent and goal-directed thought process, mildly dysphoric and tense affect,

---

[2] A GAF of between 51 and 60 indicates moderate symptoms (e.g., flat affect and circumstantial speech, occasional panic attacks) or moderate difficulty in social, occupational, or school functioning (e.g., few friends, conflicts with peers or co-workers). American Psychiatric Association, Diagnostic and Statistical Manual of Mental Disorders (DSM-IV-TR) 34 (4th ed. Text Revision 2000). A GAF of between 41 and 50 indicates serious symptoms (e.g., suicidal ideation, severe obsessional rituals, frequent shoplifting) or any serious impairment in social, occupational, or school functioning (e.g., no friends, unable to keep a job). Id.

and intact memory, attention, and concentration. T. 443-44. Plaintiff told Dr. Ransom that her daily activities included maintaining her personal care, preparing meals, cleaning, doing laundry, shopping, socializing with her family, watching television, reading, and making crafts. T. 444.

Dr. Ransom opined that Plaintiff could follow and understand simple directions and instructions, perform simple tasks independently, maintain attention and concentration for simple tasks, maintain a simple regular schedule, and learn simple new tasks. T. 444. She indicated that Plaintiff had only mild difficulty performing complex tasks, relating adequately with others, and appropriately dealing with stress. T. 444.

On April 25, 2014, Mr. Walck, LMSW, assessed Plaintiff's prognosis as fair, and she was not referred to a psychiatrist in lieu of conservative measures. T. 791. Although Plaintiff was scheduled to attend counseling sessions every two weeks, she did not return to the Clinic until June 20, 2014, at which time she was again diagnosed with generalized anxiety disorder and depressive disorder. T. 794-95.

Plaintiff returned to the Clinic on August 19, 2014. T. 798-805. The provider noted that "adequate coping skills of yet to be established as client has shown poor attendance." T. 799.

On August 28, 2014, Plaintiff complained of increased difficulty falling/staying asleep and that her thoughts were racing at night. She had episodes of stress-induced anxiety. T. 763-765. On September 9, 2014, Plaintiff was again seen at the Clinic with continuing depression and anxiety. At Plaintiff's September 30, 2014 session, it was noted her condition and complaints were unchanged. T. 808-812.

On February 10, 2015, Plaintiff complained her anxiety and insomnia had increased. She was grieving the loss of her grandmother as well as dealing with longstanding family issues and despite learning to use tools for self-help, these issues were still overwhelming to her. She stated that something was wrong with her and she couldn't seem to get out of the mood she was in. Her diagnosis of depressive disorder remained the same. T. 839.

On March 23, 2015, Plaintiff complained that she was feeling more overwhelmed with worry which interfered with her quality of life, and was having trouble sleeping. Her prior diagnosis of depressive disorder and anxiety remained the same. T. 835-836.

On July 6, 2015, Plaintiff was treated at Tuscarora where her continuing diagnosis of depressive disorder, malaise and fatigue were confirmed. T. 906.

On March 14, 2016, Plaintiff was treated at Tuscarora and complained that her depression was getting worse and medication was not helping enough. T. 919-920.

9

On May 26, 2016, a Mental Health Report was filled out by the Niagara County Department of Social Services which indicated Plaintiff suffered from major depressive disorder and generalized anxiety disorder in addition to her physical ailments. She also was assessed as having relationship issues with limited social support. She was prescribed Wellbutrin, Lexapro, Klonopin, Celebrex, and Norvasc. The Report states that Plaintiff showed uneven improvement throughout the program. T. 977.

On July 6, 2016, psychologist Dr. Christopher Pino evaluated Plaintiff and stated he would continue treating her for social anxiety disorder and depression. T. 883. At that time he assessed a GAF score of 50. Id.

Plaintiff now requests that the matter be remanded for the ALJ to determine how Plaintiff's severe anxiety and depression affect her RFC. The Court agrees that the ALJ erred in her step two severity analysis in light of her subsequent RFC finding which does not contain any mental limitations. T. 27. Rather, the ALJ found that Plaintiff could perform her past work of telephone sales representative and customer relations complaint clerk, both semiskilled, sedentary jobs, after assessing her RFC with the physical demands of the work only. Id.

Generally, the failure to find an impairment severe at step two may be considered harmless, and the Court would be inclined to find such a failure to be harmless error, since the ALJ found other

10

impairments to be severe and continued with the sequential evaluation. However, the medical, testimonial, and opinion evidence calls into question whether the ALJ properly considered the evidence related to Plaintiff's mental impairments.[3] On remand, the ALJ should address the effects of Plaintiff's combined impairments. See Social Security Ruling ("SSR") 85-28.

In light of the Court's determination it need not reach Plaintiff's remaining arguments.

## **CONCLUSION**

For the foregoing reasons, Plaintiff's motion is granted to the extent that the matter is remanded to the Commissioner for further administrative proceedings consistent with this Decision and Order and the Commissioner's motion is denied.

ALL OF THE ABOVE IS SO ORDERED.

S/Michael A. Telesca

MICHAEL A. TELESCA
United States District Judge

Dated: Rochester, New York
October_15, 2018

---

[3] The Court has reviewed Plaintiff's claim of error regarding her physical impairments and finds it to be without merit.